Case number 24-1727, Darian McKinney appellant v. District of Columbia, Ms. McAdoo-Gordon for the appellant, Ms. Johnson for the appellate. Good morning, Your Honors. Leslie McAdoo-Gordon on behalf of Mr. McKinney. Procedurally, this case is here on de novo review as to whether the complaint states claims for breach of contract and due process violations. The factual basis, big picture, is that Darian McKinney, a government employee, a teacher, was blackballed by the DC public schools and then stonewalled when he tried to contest that misbehavior. The central focus of much of the legal analysis is the settlement agreement entered into by the parties in 2019. At that time, Mr. McKinney was a full employee of the department. He was in the process of grieving a prior adverse adjudication in 2018 before the Office of Labor Relations and Employee Management. Prior to that, he had contested two cases successfully before the DC Commission on Human Rights in 2015 and 2019 where the department had claimed that he had failed background checks. Mr. McKinney was given formal notifications of those allegedly failed background checks. He was given formal paperwork with appellate rights. He pursued those rights to the DC Commission on Human Rights and prevailed in both of those cases. In the summer of 2019, Mr. McKinney and the department were in ongoing litigation in front of the Office of Labor Relations and Employee Management on this non-background check issue and they entered into a settlement agreement. The settlement agreement is dated November 2019, but it was made retroactive to August of 2019. On that date, I believe it's August 26th, Mr. McKinney ceased to be an employee of the department, and he had contractual rights from that point going forward. So what he gave up in the settlement agreement was his status as a full-time employee. He was fully covered, tenured, he had four years into his service, he needed only one more year in order to be eligible for a retirement annuity, and he was fully covered by the union contract. Going back, you mentioned the emails that Mr. McKinney received from the DC Career Office. Did those emails attach or include a copy of a suitability determination? The original ones prior to 2019 did. That he successfully appealed, but the ones from jobs thereafter?  After the settlement agreement, he received email communications from the Office of Security, not the Human Relations. There are a lot of sub-departments in this case. So the Office of Security sent him emails allegedly saying that he had failed the background investigations. An interesting point on that is that he had never filled, after 2019, after the settlement agreement, he never filled out the paperwork to submit any background investigation. The background investigation, what's the scope of it? Is it limited to criminal background or does it include disciplinary or other conduct? I would have to look at the regs, which I cite, to see if it goes beyond criminal background, criminal checks. It is primarily, of course, we're dealing with teachers, dealing with children, so it is primarily geared toward criminal conduct, but it's not limited to that, I don't believe. As I understand your argument, there's a provision in the settlement agreement that says he shall be allowed to apply for teaching positions at DCPS starting the 2020 to 2021 school year. And you want to interpret the covenant of good faith and fair dealing to require DCPS to, I guess, properly process any new job that he might get with DCPS. Genuinely do the process. It seems to me that he was allowed to apply and he otherwise would have been ineligible because he got a buyout. Because normally, if you get a buyout, you're not eligible to apply for three years. Correct. He did get something out of this provision, but you want to read into this something in addition, which is that they had to, in good faith, process his application. They did consider his application, he got two job offers, but then where things fell apart was at the background check. At the ministerial stage after the offer and acceptance, correct? For two of the counts. And so I guess my question is, that's reading a lot into the words shall be allowed to apply. And why wasn't, why shouldn't he have had to negotiate better language here if he wanted it to extend all the way through the process? Because correct me if I'm wrong, my understanding is if anybody just applies for a job with DCPS, there are no obligations to properly process background checks or anything like that. So he's asking for something in addition. Why does that need to be spelled out? Unfortunately, it is the state of the law that if a mere applicant comes to the district as a government entity and applies for a position, that the district does not have to afford them any due process. Some people would argue that that is not appropriate because the city is a government entity, but the state of the law is as you've stated it. Well, you don't have an interest to be protected at that point. Correct. But basically, being allowed to apply doesn't confer any obligations on the part of the district to do anything with your application. If you were a mere applicant, correct. I concede that point. But Mr. McKinney was not. But that was a settlement agreement, allowed to apply. He's asking for status to be an applicant. He wouldn't normally be allowed to be because he took a buyout. He wouldn't be eligible for three years. So he got something out of this provision. And then all he negotiated for was shall be allowed to apply. Why didn't he negotiate for something more if he wanted something? Well, he had union representation with him. And I think it's very unlikely that the union on the one side and the city's lawyers on the other thought that his ability to reapply meant that he could simply put in some paperwork and that was going to be it. But if that's the default, why not? That's the default. Being allowed to apply means you put in your application. And the context is the district doesn't have to do anything with that if they don't. Indeed, it is perfectly plausible because in some situations like that, the opposite might be true. Parties might agree you will not be allowed to apply anymore. We're signing off. That's our deal. Whereas this deal is you can't apply. We're not we're not going to block that. But when you apply, you're in no different situation than anyone else who applies unless there's something in the contract that says that. But he is in a different situation because the contract, because I'm looking at your contract argument, because unlike a mere applicant, he came into the settlement agreement as a fully vested employee. He, in consideration, gave up that status in exchange for the right to reapply. And as a part of a contract, he has an exchange for the right to apply as opposed to we're not giving you the right to apply. That's really what was going on, and they were in they were disagreeing and there was a there was a negotiation. How are we going to end it? We'll give you a payment. You can apply if you want to, but as opposed to we're not going to even let you apply in the future. You have the right to apply in any person in a right to apply. So I just want to make sure you're understanding what's bothering me and a right to apply situation certainly is not guaranteed a position that just an opportunity to apply to be considered. That interpretation would render the covenant to act in good faith completely illusory. I think he would have gotten nothing to be taken in contact. I thought your position was not that every time he submits an application, he gets better or different treatment, but that when he's offered a job and accepts the offer, then just like anyone else in that situation, he's entitled to a full and fair background investigation. Right? He was entitled to the normal process. He got less than the normal process is what he got way. He got less than the normal process, you know, because he happened to have failed a background check in the past. He knew that he would get a at least as alleged a determination of an eligibility or whatever the document from the security office, right? And an opportunity to appeal that to what is it internal administrative and then to the human rights commission or just directly to the human rights? I think it's directly to the commission. Okay. Right. So he was confident of what the process was going to be, but he didn't get it. The reason I asked about the whether it only covers criminal or whether it also covers other misconduct is one way to read the record in this case is that the settlement itself, the letter, the notice of settlement refers to substantiated sexual harassment allegations. And if there are substantiated sexual harassment allegations going forward from 2019, and if a background takes note of those, then maybe anybody who has a substantial substantiated, even if non-criminal background facts is going to be treated the way Mr. McKinney was. We don't have information about that. But paragraph three of the agreement says that the city agreed to remove any investigation and notice of the substantial from his official personnel file, right? Well, as every employment lawyer knows, an official personnel file is only one source of information. If people conduct background check, if they call prior employers, if, you know, that there are other ways to get information. So presumably they didn't get it from his official personnel folder. I don't know. I don't know enough about the process for conducting a background investigation, but that seemed to me to be one explanation. What process do you think is due as a matter of remedy here that was not given by the district court? You mean process going forward on an ongoing basis? It's a due process case. You're claiming, I mean, at bottom, your claim has to be he was denied some proper process and we want it. I don't know what else your claim can be. He's certainly not guaranteed a job. Correct. We conceded that point. You can't be asking for that. Right. That's what I wanted to know. If you wanted to know what ongoing forward looking relief. I want to know what you think the relief is on a due process claim if, for example, some of us don't buy your contract argument that he's in this unique contractual position. Let's assume there is a. I think it's damages for violation of his due process rights, his liberty interest and his property interest. I don't expect the judge or the jury to award him the right to, again, reapply to the District of Columbia. What we're seeking is monetary damages because the failure to respect his due process rights deprived him of the final year that he needed for his retirement annuity. It deprived him of the employment income going forward. That income in the district is higher than what he's being paid in Prince George's County. But doesn't that assume he would have gotten the job if his damages are. All of the retirement benefits he would have gotten if he had worked another year, you're assuming and I think I thought you conceded he was entitled to get the job. Right. He didn't have a contractual right to be hired. He had a contractual and he also didn't have a process right to be hired. Correct. He had a due process. So I don't actually write damage can rely on him being hired. So as I take it, I just try to what I glean from your briefing and the complaint is that Mr. McKinney is not claiming a right to a job. He's claiming a right to a fair process, including the right to apply and including if he is deemed ineligible based on a background check, a right to know the content of the background check and which he's had in the past and successfully appealed from so that he could actually get some of the jobs he's held in the past and that going forward, if they're still relying on that same misinformation, I need to go through the extra hoop. But I'm not even now after the settlement, I'm not even getting that same standard process from the D.C., whatever it is, Office of Security that I used to get. So I can clear this up. Right. That's your position. So it's not asking for anything special. Stonewalled him. But they stonewalled the due process. Their own process. Make sure I understand when you say like I used to get. When did he used to get this? In the two previous times when he was told that he failed the background check. Right. But not based on any city rule that required it and not based on the settlement agreement that he had with the city. At that time. They just did. No, at that time it was based not on the contract because it didn't exist yet, but it was based on the ordinary regulations that give the employees a right to appeal such a determination to the D.C. Human Rights Commission. All employees who applied for teaching position in D.C. and were denied were guaranteed a right to a background check. That can't be right. The statute requires the city to perform the background checked. The statute requires the city to perform the background. Any employee who applies for teaching positions. Yes. If they hire that person. If they make an offer. They make an offer. Yeah. Not as a general matter. This is this is a little confusing. You're when you say apply. You're assuming in your mind the acceptance. Right. Right. Here. I mean, isn't there a regulation? I thought that the that the regulation says that if an applicant is denied, the mayor shall the mayor or the mayor's designee shall inform the applicant in writing and the applicant may appeal the denial to the Commission on Human Rights. Correct. So if there is I'm sorry, it seems to me that where we're all getting confused here is that somebody gets an offer from D.C., they will conduct a background check in the normal course and then they have a right to appeal that if they feel the background check. But nowhere in this scenario is there a regulation or a rule or anything that says you're entitled to a background check if you get an offer. No, but the city is required to conduct the check if they if you become a teacher. You have to have had a background check. It's part of their process. But I think what's important here is that what he is asserting is that in the past, I got background checks and got to appeal them. This time, I didn't get background checks and didn't get to appeal it. But underlying that is a claim that I had a right to a background check and there is no such right to a background check because the city, for any general applicant, could just decide we're not going to do the background check and that person doesn't get hired. And there's no claim of action. There's no right that's been violated, but the reason they can hire or not hire you at their will. Yeah, I really need for you to hear what my colleagues ask, because that is what's bothering me. You as well. I am not aware of any such requirement when someone comes in and wants a job in this department. There must be a background check that never rang true to me. And you're not citing me to anything, certainly not the contract here. And there's no regulation that says if you get an offer, yes, they routinely will do But he had to, he had two offers. That's beyond, that's past this. He got the background check there. No, he didn't. No, no, sir. No, he had two offers of employment after the settlement agreement. There's two background checks before the settlement agreement. And then there's two offers after the settlement agreement where the city claimed they did background checks and claimed that he failed them. And then for those two post settlement background checks, he didn't get any process. My claim is there are two situations in which we think the law required a background check and he didn't get it. That's it. Just two. There are no others that I can see. I have three counts, but one relates to the, both relate to post settlement agreement offers and acceptances, and then allegedly a failure of a background check. That's counts one and three. Count two is in the interim between those two offers and acceptances, he applied for jobs and even before he was told he got an offer, the city sent him something saying you failed the background check. So he didn't even get to that step. Okay. So he got the background check. Now, what's your claim? I'm just trying to make sure I understand it. He was told he had a background check. He was told he had a background check and then he failed it. Now, what's your remedy? What are you saying was the city's failure in that situation? I'm saying they are falsely telling him he failed the background check. What's your remedy?  Money damages. He wants money damages. Because he was falsely told that he had a background check? Because his right to due process was violated. His liberty right to due process, his property right to due process. Wouldn't a remedy be background check? If he were still wanting to get a job with the city, I suppose it would be to put him back to where he was and reapply again, possibly. But that's not what we're suing for. We're suing for money because his rights were violated. And your evidence to support your belief that he really didn't have a background check? You're assuming something standard about a background check. Well, I'm... Let me just...  Just so you understand what's going through my head. You've had a couple of background checks in the past. You're not unknown to an employer. There's clearly a record. And it's not going to be unknown to those who are in the business of hiring people. But a background check, B, your name comes up and they say, oh, there's a file there. No. We looked at it. There's nothing different in what he's given us now. That's our background check. We don't have to do anything more. We're done. Previously, though, whenever he'd had the background check, he had had to submit paperwork. Each time. That's precisely my point. There is nothing in the regulation that says a background check must be done in this way. Can a background check occur if someone already has had background checks and they've been in a hiring situation, he comes in again, this known quantity is known, they look at his file and they say, no, we don't want to go with that person. Is that a background check? Why not? If it's not... Maybe, but it's a deviation from their procedure. I thought your position was that he had not had ultimately a prior negative background check because when he appealed... He won every time. He won every time. Every time he went to an independent agency, he wins his case. So if DCPS is relying, we know already we've been here before, it's relying in error. Correct. They can't be relying on the priors. Conflict with... The decision by the DC Human Rights Commission. Either his right to good faith and fair dealing, standard practice that everyone else would get and or his due process rights. Is that your position? Yes. But now there are substantiated sexual harassment charges. They're not in the file, but people know about them. So that's the difference between this background check and the ones he had before. Now there are substantiated sexual harassment allegations. Right. That's what the settlement agreement says. And so in that situation, then even if you could say, well, that's all we need in order to say that he failed the follow on background investigations, but he never received from the city, they're claiming that he failed, but then he's never received from the city the actual notice and the actual appellate rights. So there again, they're deviating from their prior procedure for how the background check is conducted. No, no, no, no, no, no. In my head, what I want to ask you is, well, what reg says they have to do that or what agreement says they have to do it? If they looked and saw the reasons for the prior experiences they've had, what more do they have to say? Well, I cited the reg, Judge Pillard mentioned it, where if he did, in fact, fail the background check, he was entitled to appeal it to the D.C. Human Rights Commission. Did he try and appeal in the later times? Yes, this is what I'm talking about. So in the prior times. No, get me up to date, the later times which we've been focused in the later times, he was notified by email, not the official notification that he received in the past. He was notified by email that he failed. He then repeatedly contacted the department to say, well, I got this notice over here from security. You guys are then supposed to send me the official notice, which has all of my appellate rights and the official written determination, because in order to invoke the D.C. Human Rights Commission's process, he has to submit that to the commission so they know what the case is about. It's like when the lower clerk here forwards the record to this court. So he needed the city to do all of that. But they just stonewalled him. They just refused to answer any of his emails or even communicate with the case on the due process violation. So I make sure I understand each time he was told that there was a background check, he had guaranteed right under city regs to say, I want to appeal that. And he should have been given the process. Right. And that process did happen before the settlement agreement. And it did not happen after the settlement agreement because these folks decided they weren't going to hire him no matter what. And we allege that in our complaint, Paragraph 76, there is a witness who had told Mr. McKinney that higher up personnel in the department said they were not going to process him for employment no matter what, no matter what he did in total violation of his contractual rights and his civil rights. So at bottom, at least your contract claim hinges on shall be allowed means. We will process you and give you a background in a normal way, right, even though normal people who are allowed to apply don't have that right. That's your contract claim depends upon him having rights beyond what other people who are allowed to apply have. Yes, a small fraction because a mere applicant, you don't have any of those rights. But Mr. McKinney is not a mere applicant. No, I understand that. But it's just not written to the contract. Then you should have rights above and beyond what other applicants have. And on your due process, right, then your claims depend upon he has to have a due process right and getting a background check and appealing the background check. That's the that's what he was entitled. I don't know if I would articulate it that way, that he had to due process right in the background check. The background check is a mandate of the city's obligations for the hiring of teachers. He doesn't have to have a right to that. That's a normal part of the process. But what you're saying he was deprived of was the background check. The normal part of the process. Yes. Right. In this instance, it is the background. And I mean, you're saying he didn't get the background check, but more than that, like the. The regulations talk about. The ability to. Seek review. And they say that the petitioner, in this case, Mr. McKinney, shall file a notice of appeal along with a copy of the suitability determination being appealed, and as I read your. Complaint in your briefing. Central part of Mr. McKinney's argument is that he's entitled to a suitability determination and he never got the last two times, the first two times he did the last two times he did. Right. Right. And I mean, setting aside the applications where he got the sort of. Brushed off, you characterize this like a premature suitability determination. Right. If you have a suitability determination. And it's in. The situation of a school, in other words, a safety sensitive position, child or youth services. The determination is essentially establishing that the person presents a danger. That's what the reg says. That's what the rest says. Yes. So that's the liberty interest is that somebody who has been deemed officially to be a danger to children, to be a danger to children or youth and has no determination. So saying and has no ability to appeal it to the D.C. Commission on Human Rights. And I guess my question is. This isn't brief, and I'm puzzled by whether why it wasn't brief, but assuming that the background check looks into more than just criminal background, there's a settlement that says there's substantiated sexual harassment against this individual. Why do you if it's that's part of a settlement, I'm not sure there's a need for an appeal, but I mean, this will be a question for the government. But if there's substantiated sexual harassment allegations, typically an appeal is needed to say, no, no, that's not the case. But in the settlement to which Mr. McKinney agreed, says it is the case. I'm looking at two on page twenty, I'm looking I'm looking at it as well. And I'm just crossing over, there was a settlement here. Certain things were assumed and I don't see anything in that settlement saying you're entitled to the kind of process you're now claiming. And I don't certainly don't see it in the regs. Normal person coming in the door doesn't come in with this kind of paperwork. And I guess I mean, I guess what I understand your position in light of the settlement is that he's entitled in light of whatever that was to a suitability determination to something that actually looks at that and says, well, how much weight to give it? Because this settlement was before the Labor and Relations Board. He was entitled to another determination by the Human Rights Commission. The city was going to rely on the settlement and say, well, we have these substantiated sexual harassment thing. He was entitled to at least argue that doesn't justify you denying my background. And just for clarity, the acts that are referenced in the substantiated sexual harassment, that's distinct from the acts that were the subject of his two prior disqualifications and appeals. Correct. This is new material, new material. Any other questions? At least we didn't have to parse through the FAM in my case. Ms. Johnson, good morning. May it please the court. The allowed to apply language in the settlement agreement was not crafted out of whole cloth for the settlement agreement that comes directly from the collective bargaining agreement. And unfortunately, there's no page numbers. So I'm going to give you the article numbers where you can look those up at the collective bargaining agreement. Four point five point seven. And again, at thirty nine point eight. The first that I cited has to deal with teachers who are accessed and the second has to deal with teachers who are rift. But both involve separations due to an excess or a rift. And they have the same language. And they say separated teachers shall have the right to reapply at any time. If rehired, they'll start at the next salary step. And if rehired within one year, there's no break in service for pension purposes. I want to be clear. That's the only purpose for which there's no break in service. So for probationary purposes, there is a break in service. That's yeah, that's absolutely correct. And that's why I wanted to emphasize that even though that's not part of the contractual, that's more the property interest side. But I want to make sure that's emphasized while we're talking about this. So the collective bargaining agreement, I mean, the settlement agreement, once it's read in context with the collective bargaining agreement, the only thing it promises is that despite taking the buyout, Mr. McKinney is going to be allowed to apply the next year instead of having to wait for three years. And that promise wasn't anything special. That is the same right that anybody gets under the collective bargaining agreement if they're separated. It just allowed him to take the buyout, even though the time for doing so had passed. He then released all of his challenges against the administrative actions being taken, the employment actions being taken against him. And they settled for that. Nowhere in there is there some right to a predetermination background check. No, no, no, no. But what about the jobs you get? You get it. I mean, right to apply, presumably something. It's not an empty phrase. So he applies, gets offered the job, typically in the private sector, done deal. You know, but schools, so the government has an obligation and and does a background check and his claim is, but you're not doing the background check the way you do it for everybody else. You're giving me a ding before I even get a suitability determination. You're treating me as unsuitable up front. I mean, that's alleged. I don't know whether that's what happened, but that's alleged. And that seems like that does stay. Or why doesn't that state a violation of good faith and fair dealing? And why doesn't that impinge a liberty interest in a reputation when it's saying you're danger to children? So there's a lot to unpack there. And I want to know in a few different pieces. I will. I will. I assure you. So let's start with just the factual allegation that he was offered jobs. He says he was offered jobs by principals. Now, a principal might say, I like you and I'm going to recommend that you get offered the job. But by law, the chancellor is the one with the final discretion to say yes or no. So he didn't have binding job offers. So you're not telling us that every person hired in DCPS actually goes and gets checked off by the chancellor. That's sort of a legal background. If there's a problem, I presume that is a way of effectuating the background check requirement. Well, his background check came through Flying Colors. He still would have had to get a chancellor sign up. I think that the chancellor would have had the discretion to say no. Absolutely. No, absolutely. But I think that matters for purposes of the contract. It may matters for purposes of due process. I'm not sure it matters for purposes of the contract. So then so let's move forward on that in the contract and let's assume that. Well, he's still nothing under the contract gives him any right to to to to. Sorry, I'm reframing this in my head because to me, he didn't have a job offer. Like, I don't see how he could possibly claim to have a job officer when his job was being submitted to headquarters to see whether they would hire him. But he had a principal that wanted to hire him subject to approval downtown. So I think that any teacher who has been previously employed and they're reapplying and it's subject to approval downtown, downtown gets a chance to consider whether that's the person they want to hire. And nothing is saying part of that background check. Part of that is a background check. A background check looks at your background and makes a determination about it, tells you what it was. And if it's wrong, you get to appeal it. You don't deny any of that, do you? But you don't get any. I don't I don't deny that. But you don't get that until you've been given an official job offer, a formal job offer from DCPS, not from the principal. Wait, wait, wait. They didn't deny they did background checks. They claim they did them. In fact, it's the plaintiff that's saying you didn't really do it. So the position of DCPS has to be we proceeded into the background check stage, not that the chancellor didn't even allow that to happen. Right now, the position of DCPS is that we're looking at the four corners of the complaint and the four corners of the complaint, to be fair, say we don't think a background check was conducted. It's not saying for sure there wasn't. So you have to look at it both ways. But we're not at a place in litigation yet for DCPS to be saying what happened. There's been no discovery. What we're saying is if you look at the four corners of this contract, it would be astonishing and implausible that DCPS would have agreed that a jury gets to decide whether this this individual was given fair consideration and that a jury would get to decide whether any person who was separated and reapplies. You go back. If you went back to the district court, you would there would be summary judgment proceedings. You would say you don't deny this document, this document, this document. The chancellor sent you a letter saying, sorry, we're actually not interested. So we're not going to do a background check. OK, or we did one. And here's the notices of termination we sent you or whatever. I mean, but so, you know, you wouldn't go to a jury necessarily. But we're looking at allegations. And the question is, do these allegations state a claim that even though this person was had a protected right to apply. He was not treated in the regular course of application that would apply to anyone else. He was dinged in a way that's contrary to the regulations and that's contrary to the usual process. That's his claim. I mean, I see that that's his claim. And we think that the contract is so clear that there'd be no need to go beyond the corners and go into what the party's intended or what happened. But can I ask a question? Wait, let me just get an answer to this. What what is it clear about? It's clear that the only thing that was promised was that he would not be was that he would not be precluded from applying because he took the buyout. He was not precluded from applying because he took the buyout. That's the only thing that I think that the contract can be read to provide. It's very careful language right to apply. And I just I want to point out and I do want to have time to get to the constitutional claim. So I understand where the court comes from this. But I want to point out that the only hiring case, the hiring decisions are very discretionary. There's a lot of judgment involved in the only hiring case that Mr. McKinney has come up with is from a district court in Oregon where somebody had a right to apply for a vacancy. And the only reason there was any sort of hint of an implied covenant of good faith and fair dealing is because in that case, the school district privatized its janitorial service and got rid of the vacancies altogether. I think the implied covenant of good faith and fair dealing doesn't mean that your application is going to be given some sort of fair consideration or extra consideration. I don't know what that means. That's beyond the rights that someone else would have. And I don't think that this court, because of that, has any reason to get into whether or not there was a background check or anything like that. So that's I mean, that's where we think that the contract stands. I understand if this court thinks it needs factual development, we just think that that would be futile given the language of the complaint and how it connects to the collective bargaining agreement. So it seems to me that a lot of this colloquy stems or relies on the fact that he's being treated differently from other people and somehow that implicates good faith and fair dealing. I thought it was useful that you said that this term allows to apply comes from a CBI. Is that understood in the context of the CBI when you're allowed to apply that that means they're going to in good faith process applications and that kind of thing? All I think it means is that you're not precluded from applying because of something else in the collective bargaining agreement. Your answer is no. CBI allowed to apply doesn't mean you're entitled to a background check or any processing. I think that's right. And then average applicants, anybody who walks in off the street and applies for a job with DCPS, do they have a right to a background check if they're offered a job? No, they well, they don't have a right. They don't have a right to an offer. They don't have a right to any sort of process until they are formally hired, until they have signed the hiring documents. So it could happen. Just a hypothetical. Somebody gets offered a job to be a gym teacher at Elliott Middle School. And at that point, DCPS decides just not to do the background check. Is there do they have a right to that background check? No, they don't have a right to that background check. And I just wanted to be clear. So therefore, what what is being asked for in interpreting just allowed to apply in this settlement is that somehow this Mr. McKinney was entitled to something above and beyond what. Other employees subject to the CBI get and what other applicants off the street get, but it's not written into the contract, that's correct, that's correct. And I want to explain my hesitation when we start talking about good faith. Obviously, we want our government officials to act in good faith and obviously it's best practices to do so. But when we're talking about the implied covenant of good faith and fair dealing, I'm talking about a specific covenant under the contract and not every term of a contract is going to be susceptible to violations of that without some sort of absurd hypothetical. So anyway, with that in mind, I would like to turn to the constitutional claims that have much far reaching, more far reaching consequences. One question about that. When Judge Pan asked you if under the collective bargaining agreement you're allowed to reapply, let's say after three years or what's the standard term that this is modeled on? It's a. You said this is modeled on a standard term of a collective bargaining agreement. Yes, it's the collective bargaining agreement for the teachers union and the district. Where if you're laid off, you get to reapply after three years? No, no, no. If if you were laid off, if you were separated pursuant to that, you may reapply at any time. Right. Unless you took the buyout. Right. And then this is giving him the you may reapply at any time, even though he took a buyout. So it's sort of melding two different statuses. But you're saying that under the collective bargaining agreement, a right to reapply. Doesn't mean a right to be treated as any other applicant. I don't know. I apologize. I would say no. In answer to her, I think I was confused by the phrasing of the questioner was maybe it's just my own problem. I apologize for that. It gives it gives you the right to be treated exactly as any other applicant and other kind of the same as you don't have anything until someone hands you a piece of paper and says you're hired. That's exactly right. You have a right to go through the process as the school defines it. And you wait and you hope for the best. And before and you don't have and this is what I think sort of segues into the property interest, because I think this is important. You don't have a property interest to not be hired without cause before you're hired. And then you have to serve and then you have to serve. I mean, good faith and fair dealing is a different threshold. It is. I'm sorry. I was turning to that before. If that was before the court was ready. Fair dealing. It gives the right to be treated as anyone else. And DCPS, it's not that you have a right to a background check. Is that anybody who's. Going to be hired that a principal wants to hire has to clear a background check, right? It's not that you sort of can say, oh, we're not even going to do that. No, anyone the chancellor wants to hire and is offered formally offered a job by DCPS itself, then gets a background check and they don't have a right to the background check. It's just that if they formally fail the background check, they can appeal that. Right. But if the principal wants you and if it's fine with the chancellor to hire whoever the principal wants. Then you still would have to have a background check. Yes. And there is an ordinary way that that happens. And if you fail it, you get a notice of determination, notice of ineligibility. Right. I mean, that's I think it's alleged in the complaint to be standard practice. That's not in the law. Well, you get a formal determination, which say that in order to appeal. You need to. You bring your final suitability determination to the Human Rights Commission. Well, and I was I apologize because I was jumping ahead from contract to liberty interest, because, yeah, the regulations do say you're supposed to get a formal determination. But I don't think that the denial of a formal determination means that somebody has not been given the process that they're due. Mr. McKinney knew he could go to the Commission on Mental Health, Human Rights, and there's no way that he had gone. I know I'm jumping. I apologize. But if he had gone to the Commission on Human Rights and said, I have an email saying I failed a background check, but the agency won't tell me why the commission wouldn't denied his appeal, the commission would have said, well, DCPS, why did he fail? And then DCPS would have said, oh, he didn't or he did. And here's why. And they would have proceeded. And I want to point this court to McCormick on this point, because in McCormick, the plaintiff did not think he had a right to appeal. And the court said there's a provision in the CMPA that gives you a right to go to the superior court if you think that you were entitled to severance pay and that would have given you the name clearing hearing. And and again, I'm going out of out of order here, but I want to give this court one other site that's not in my brief because I think it's important to this point. It's Johnson, Sally Johnson versus District of Columbia. The citation is 552 Federal 3rd 806. And at footnote eight, this is a this is an employee who was claiming that the district refused to proceed with arbitration when it was supposed to. And what the court said was that she had all the process that she was due because the law gave her an administrative remedy to go to Perb and force D.C. to arbitrate. So that goes much further into liberty interest than I think is necessary. I think there's other ways to deal with the liberty interest claim. But I find it astonishing that Mr. McCormick doesn't think he had a right to appeal when the law gave him a right to appeal. And he did not attempt to do so. But he could probably now bring a Section 1983 liberty claim in superior court or in this in the district court if he wanted to. Well, this is a Section 1983 liberty interest claim. I don't I mean, that's that's the claim he's bringing. It's just we don't think that he states a claim. And I'm happy to turn to liberty interest. I think that that's important to do. So I have a couple layers. So with the court's indulgence, the first thing I really want to point out is he's forfeited his debarment claim. He did not make a debarment claim in the superior court. If you look at record document eight, that's his opposition to the motion to dismiss at pages eight to 11. All he talks about is an injury to his reputation if DCPS published their their determination that he failed a background check. That's all he says. He never says that he was formally debarred. And even his last paragraph, there's a fragment of a sentence that says that he was completely precluded from obtaining any teaching position in any public school in the district. And the sentence goes on to say and would be as well from any other school in the district. As a result, he's foreclosed from entering the field. So I just want to lay that out there that we think that's forfeited. But even beyond that, if you look at the liberty interest, there's sort of two different sides of looking at it. Either there was a formal determination or there wasn't. And if there was a formal determination that he failed a background check, even if even if that could be relied on by even if that was binding, which we don't think it was because it's discretionary for future job offers. One year debarment from one agency cannot rise to the level of liberty interest deprivation. And we know that from this court's Langman decision two years ago, where this court said that even if someone was automatically formally precluded a special agent from ever working for the FBI again, that doesn't rise to the level of a liberty interest deprivation. And so given the the the high bar that you have to clear to show that you've been denied of not a property interest, but a liberty interest in following your chosen occupation, there's just no way to square Langman where somebody couldn't work as in his field for the FBI ever again. And somebody where the District of Columbia, DCPS, just didn't want him, didn't want to hire him. So that's if it was formal. If it was informal, I mean, Mr. McKinney is trying to argue that you can be informally debarred but not have to satisfy the broad preclusion standards that are required for the that standard of the stigma plus test. And it's one or the other. Either it was formal automatic binding exclusion. I believe Crooks uses the word change in legal status. Either it was that and it was formal or if it was de facto debarment, he has to show that this would preclude him from obtaining other work in his chosen field. He clearly can't do so. He's he's abandoned that claim and is now only pursuing the debarment claim. So I want to make sure I know my time has run out. And there's a few things that I just want to make sure I cover that came from the reply brief. Mr. McKinney, in support of his claim that he can pursue a debarment claim as opposed to the broad foreclosure claim, says that in Campbell, this court said that that was a jury question. But Campbell was not a formal debarment claim. It was a broad foreclosure claim. And that would be a much I mean, we don't think it's a close question here. And he's abandoned that claim here. But that could go to a jury. There's the binding disqualification and he relies on Cartseva and he says that this is a legal conclusion by DCPS that he presents present danger. And so, you know, he can work in Maryland. He's he's debarred in D.C. I'm not sure I'm seeing the I know you're making a forfeiture argument, but when I look at the district court document that you're citing to. You know, it doesn't seem to me that clear that it's limiting itself to the broad preclusion as opposed to the formal, but perhaps, you know, more limited debarment claim, it seems like they're both in there. I mean, this court can consider the claim even if he did forfeit. So what I'm pointing out is that the the point of issue preservation is to put people on notice of the argument that you're making. And nobody thought he was making that argument until appeal. The district court didn't think so. The District of Columbia didn't think so. So that's all I'm saying. But if we're dealing with the formal binding debarment, there's so many layers by which he doesn't state a claim. First of all, he says that there was no formal determination. But even if there was a formal determination, it wasn't binding because at 6B DCMR 406.9, so cited in my brief, it says that an adverse suitability determination may be relied on in future job applications at the discretion of the personnel authority. And I would contest that discretion means that it's not automatic or binding. So there's that layer in which we think that claim fails. But even if this court says, well, we think that that's binding enough, then we come down to the fact that it can only be relied on for one year and only for DCPS, not for other schools. There are more than 200 non DCPS schools. I apologize, I'm winding up there, there are more than 200. I mean, I just looked it up on Google, so there are more than 200 DC non DCPS public schools in the district alone. If in Langman, a special agent with high skills in investigation, if his permanent debarment from working for the FBI ever again can't rise to the level of a liberty interest, then what is at most a one year debarment from working for DCPS cannot either. And then, of course, there's our background, our final argument, which is that he had the process, he was due, even if this had turned into that sort of a deprivation. Thank you. So some interesting points here, my friend adverts to where we are in the litigation, not at this place in the litigation. So there's been no discovery, I would note. We're very, very early in this case. Motion to dismiss. And I think that contrary to what's asserted here, what the discovery will show is further proof of what we've alleged. The really bad acts in this case are behind the scenes. All of those facts would have to come out in discovery because they're purely within the purview of the defendant in this case. I also understood the argument from the city to be that somehow the covenant of good and fair dealing doesn't apply to the collective bargaining agreement. And I think the Washington Teachers Union would be shocked to know that the city is taking that position. I think that's clearly not correct. I think she disavowed that. Perhaps later. In terms of what arguments were raised below, were not raised below, I would remind the court that we're on de novo review in this case of a 12B6 motion and that consequently this court's obligation is to examine the complaint independently to determine if the factual allegations could provide for relief under any viable legal theory, even one not mentioned therein. This is Edmonds v. U.S. Postal Service, a concurrence and dissent by Judge Silberman. What the court has to do here is determine whether the complaint states causes of action. You're redoing what the district court did. You're not deferring to that judgment. And also Liberty claimed you're not asserting a reputation plus for stigma theory, right? That's what it says on page 23. We're right. That's kind of gotten refined as we've gone. What we're asserting is most clearly stated in my reply brief, which is under CART-SAVA is sort of a sub part of the stigma plus. Yeah. So. She said you're not asserting a stigma plus theory and you just said, yes, we are a sub part of the stigma plus theory in the reply. That's the last argument in the reply, stigma theory. Based on preclusion. Stigma debarment, right, it's just a debarment theory, correct? That's stigma plus theory. It is. It's one of the sub parts. CART-SAVA makes it clear that there's sort of two versions of that. We're under one. And the it obviously is clear that Mr. McKinney is teaching in Maryland, but the fact that the district has effectively debarred him from any teaching position in the city is really the issue. So, as I said in my papers below, that he doesn't have to be debarred by the city from any teaching job in the entire universe of the planet. The problem is, is that he's debarred from teaching in both public and private schools because even the private schools in the district have to go through this background check because their positions are for teachers. There is also and I cite this in the reply. But your but your complaint says he didn't get background checks for the two that he. Right, but they're claiming I know, but I just want to understand, have you alleged in your complaint that he's forever barred and he'll never, ever get a background check if he ever gets another appointment opportunity, because that seems to be required by this department theory. Right. Well, if the city is going to maintain the position that it has, that he is I guess the answer is yes. Your complaint has to allege that he will never, ever if he ever gets another offer, get a background check again, doesn't it? Because that's a different theory from I was entitled and you already deprived me of the ones I got. I think all theory. I think only we would have to allege that he was precluded from any position in the district. In what time frame, though, for. I mean, just not getting two jobs doesn't mean that you're excluded from it. Well, I think the pattern is clear that it doesn't matter how many times he applies, he's never going to be right there. You have to watch that. To support this theory, you would have to allege more than he didn't get back checks for two, you would have to say, and that precludes him from ever getting any job. And what do you what so that I understand, what do you think is the stigma? No. That he's been the mayor, the mere failure. To get a position now or some accusation about past active, what is the stigma? The fact that the claim by the city that he failed the background check, right, legally means pursuant to city's regs, that he is a danger to children, that the regulations say if you fail the background check, that's what the determination concludes. And you're referring to the final suitability determination shall establish whether the appointee or employee presents a present danger to children. Are you correct? He's a teacher and a coach, and he's been determined by the city to be a danger to children. This is absolutely an applicant is denied because he presents. Can't you? That's what I'm looking at. Fourteen. Fifteen oh one says if an applicant is denied because the applicant presents a danger to children, can't you be denied a background check? The reasons other than that? Well, nobody knows what the city's reasons are in this case. Do we even know what he's been denied? Why he says the city won't say that's the whole point. That's exactly my point. What's the stigma? So in other words, there are plenty of people who can be in a situation with denied a background check. We don't assume that it has to do with this particular regulation. I think for teachers. Yes, we do. We assume that it that it means that they can't they're not safe to be around children that if you denied a background check, the only reason. Because the reason they're being subjected to the background check is because they're around children, that's the purpose. No, this is that it says he this reg says because the applicant presents a danger to children. But there are other reasons a school might not want you working around children, not necessarily because you're a danger, but because in their view, we just don't want you in our school. You're not the model we want. You have been equating this dangerousness thing as if it's a given. It's not in the record that that's what they ever said. Indeed, that's somehow strange, would be strange, given that there was a settlement he washed with. It's not making sense. He settled this case. No, he settled the case from twenty eighteen. That's right. Well, that's all him and whatever it is that people think about him. And I'm not sure where the assumption about dangerousness comes up. It's not anywhere. It's because the purpose of the background check is to ensure the safety of children. Where does it say the only reason the city, the schools use a background check is if we're concerned? No, actually, the way you're saying it, if you're denied a background check, it will only be because a determination has been made that you present a danger to children. I don't know where that's coming from. I don't have the regulation in front. I do. And that's not what it says. Not every job in the city is subjected to this background check. It has to do with safety considerations, the kinds of jobs. No, no, no. We're talking about a stigma. You've got to show in these in all this case law you've been pointing to, you're forgetting the stigma part. The mere fact that you're denied a background check. Is not necessarily stigmatizing when no one has said simultaneously to the world or anyone else that this person is a danger to children and there's nothing that says the only people who get denied a background check are those who are dangerous to children. That's not what the reg says. But for a teacher to be denied a background check carries that implication. So I'm really confused about this. And I actually meant to ask the government if the background check is more than a criminal background check. And maybe we can actually would you like to hear from just do you have any legal say? Sorry to call you up. I know that's no, it's fine. I meant I meant to address it. I this is not something that was raised in briefing. I didn't bring the statute with me. I don't know the answer. So there is a statute about criminal background checks. And that is D.C. statute four dash fifteen oh one point zero five a. And it says the information obtained from the criminal background check shall not create a disqualification or presumption against employment or volunteer status at the applicant unless the mayor determines that the applicant poses a present danger to children or youth. And then the regulation says for appointees to and employees in safety sensitive positions that a covered child or youth provider, the final suitability information shall establish whether the appointee or employee presents a present danger to children or youth. So that's the background we're talking about. Aren't you looking at the like the information obtained from the criminal background check shall not create disqualification. No, the one above. If an applicant is denied. It doesn't tell because the applicant presents a present danger to children, the mayor shall inform them in writing and they cause the applicant presents. Right. But that the A, which that is a procedural concomitant to. Says that it's not a disqualification unless there's a present danger and in making that determination. So and all this does suggest that a denial is based on a determination that you're a danger to children or youth. I think if I can proffer that some of the disconnect is between what's being called a denial of a background check and what's being called a failed background check. The district's position is that Mr. McKinney was not entitled to any of this because headquarters did not offer him a job. His name was submitted by a principal who didn't know him, who didn't know anything about him, who didn't necessarily know his background with DCPS. He gets submitted to headquarters. Headquarters decides they don't want to hire him. He's not entitled to anything else. I do not know what is involved in. I mean, first of all, I don't know what the email said that he purportedly got that said he failed to back. Would you answer this question? Is it your position that a denied background check means that a determination has been made that you're a danger to children? No, no. And that's what they're assuming. And I don't see it. That's where my colleague and I, I've never seen that. I don't know. That's why I don't know where the stigma is coming from. Well, and there would be because you've been denied a background check. And I apologize because I know I'm up and we're in rebuttal and everything's gotten a little confusing here, but the stigma claim has been waived. She's not bringing a stigma claim. She's bringing a debarment claim because DCPS didn't tell anybody the stigma comes from DCPS. I want to go beyond that. You may be wrong on the waiver of forfeiture. I want I wanted to understand because I've never really understood this. And I'm sorry I waited as long as I did. Is there is it agreed between the parties that if a background check has been denied, the assumption is a determination has been made that you're dangerous to children? I have not seen where that is supported. And it is stated, but I haven't seen where it's and I haven't seen that either. I don't know. I apologize that I can't give a better answer. This is not something that was raised in briefing. And I think it was I mean, that well, and to me, it's this a four dash one five zero one point oh five a. The information obtained from a criminal background check shall not create a disqualification or presumption against employment or volunteer status, yet unless the mayor determines the applicant poses a present danger to children, youth and the inference, you can still be denied for another reason. You can still be denied a background check for a different reason, but if you're going to get into the dangerous to children, then we get the mayor involved. That's the point I'm trying to make. That's a limited category. I don't see anything anywhere in these papers that says that a denial of a background check means a determination has been made with or without the mayor that you're in danger to children. I just don't see it. Other than the brief assertion, if I can speak to that, I think the language means. I think the language means, as your honor, Judge Blard is saying, is that the it's not doesn't make you ineligible unless there's a determination that you're a danger. Ergo, if you've been denied, if you've failed in their inartful language that the email is using, that means if so facto, you present a present danger. And I allege this in my complaints, paragraphs 90, 91 and 92, saying that being labeled in this way would subject anyone to embarrassment, humiliation, approbation, loss of reputation, stigma and ridicule. That their actions unlawfully harmed his reputation, stigmatized him, subjected him to embarrassment. Also, as I argued in my reply, he's going to have to tell people when he applies for his recertification, he applies for other schools, that he was denied this background check on this basis. So he's going to have to self-report it. On what basis? That he's a danger to children? Yes. They've never said that to him. That's what the regulation says. No. Can he be denied because the city thinks he maybe drinks too much? The statute says. Can he be denied for that reason after a background check? Is that a possibility? Not under this particular reg. Can he be denied after a background check that they think he drinks too much? Not even in the classroom, they just think he drinks too much. After a background check. And if asked and they were forced to tell, they say, yeah, we did a background check and we made that determination. We're not giving them a job. I don't think that would be consistent with this regulation. Would it be consistent with the law for them to do that? I don't think so.  Really? Does that pose a present danger to children? Or no. I wanted a hypothetical where he drinks only at home. He doesn't drink in the classroom.  I mean, there may be a different basis for them not to hire him after a background check. But they say we did a background check. And now we have any of a number of bases that are not dangerous to children. But this is labeled specifically in the code as a criminal background check. I hear you. I will. I'll think about it. But the last point that I would like to make is that in terms of he could bring a claim under 1983 in the Superior Court, I would note that as counsel notes, that's what I'm doing. And I filed this case in the Superior Court and the city removed it. Yeah. I don't think you said it, Section 1983, but you meant to. Making the due process constitutional arguments. It's definitely what it is. Thank you. Thank you. Submitted.
judges: Pillard; Pan; Edwards